IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-00405-MSK-KMT

RUSSELL EUGENE FREEMAN,

        Plaintiff,

v.

GARY WATKINS, Warden F.C.F.,
GLORIA MASTERSON, Assoc. Warden,
MICHAEL CLARK, Corr. Officer, Rec.,
CHARLES TAPPE, Hearing Chair Off.,
BRIAN BRADEN, Life Safety Coord.,
MARIA BORK, Corr. Officer,
DONNIE McCLURE, Corr. Officer,
DARRYL DIRECTO, Lieutenant,
BETTY RIGGIN, Lieutenant,
JOHN CARROLL, Case Manager III,
ROBERT LEWIS, Case Manager,
LARRY RIED, Warden C.S.P.,
CATHIE SLACK, Assoc. Warden,
RANDY FOSHE, Assoc. Warden,
ANGEL MEDINA, Security Major,
ROBERT ALLEN, Assoc. Warden,
JOE ORTIZ, Exec. Dir. (D.O.C.),
LIEUTENANT DEPPE,
CATHIE HOLST, Law Librarian,
CHARLES GIGANTE, Captain,
VICKI JARAMILLO,
BEVERLY NICHOLS,
JO JIMINEZ,
KEVIN COVIN, and
ANY AND ALL OTHER JOHN DOES, all severally and jointly in their individual and
official capacities,

        Defendants.

---

## OPINION AND ORDER GRANTING IN PART
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

THIS MATTER comes before the Court on the Defendants' Second Motion for Summary

Judgment (**#237**)[1] and brief in support (**#238**), to which the Plaintiff Russell E. Freeman

responded (**#251**)[2], and the Defendants replied (**#255**).  Having considered the same,  the Court

**FINDS** and **CONCLUDES** the following.

## I.    Jurisdiction

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II.    Facts

Construing the evidence[3] most favorably to Mr. Freeman as the non-movant, the Court

finds evidence of the material facts to be as follows.

According to Mr. Freeman, in March 2004, he was housed at Fremont Correctional

---

[1]  The first Motion for Summary Judgment was denied as moot because it was based on a previous version of the Complaint.

[2]  In construing Mr. Freeman's pleadings, the Court is mindful that he is proceeding *pro se* and, therefore, the Court construes his pleadings liberally and holds him to a "less stringent standard" than pleadings drafted by lawyers in accordance with *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Such liberal construction is intended merely to overlook technical formatting errors, poor writing style, and other defects in the party's use of legal terminology, citation, and theories.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Court, however, cannot act as a *pro se* litigant's legal advocate, and a *pro se* plaintiff retains the burden to allege sufficient facts to state a viable claim.  Furthermore, *pro se* status does not relieve a party of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court must apply the same standard to counsel licensed to practice law and to a *pro se* party.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

[3]  Mr. Freeman did not submit affidavits or other evidence in response to the Motion for Summary Judgment, only a brief.  His brief is essentially an iteration of the Second Amended Complaint (**#190**) and Supplement (**#191**).  In addition, the Court notes that Mr. Freeman submitted some documents in conjunction with an earlier attempt to file a Second Amended Complaint (**#27**), which was rejected due to incomprehensibility.

In an attempt to avoid entering a technical ruling against Mr. Freeman because of this defect, the Court will deem the Second Amended Complaint, the attachments to its predecessor complaint, and his brief to have been attested to under penalty of perjury under 28 U.S.C. § 1746, and thus treat them as affidavits.  In doing so, however, the Court limits itself to the contents of the submitted documents and the statements of which Mr. Freeman would have personal knowledge.

Facility ("FCF"). Defendant Michael Clark brought discplinary charges against Mr. Freeman regarding an physical incident between Mr. Freeman and another inmate. Pending a disciplinary hearing on such charges, unidentified personal items belonging to Mr. Freeman were confiscated. The disciplinary hearing was held on March 17, 2004 (the "March hearing") before Chuck Donley and Defendants Charles Tappe and Brian Braden. Officer Clark and another officer testified at the hearing, but the victim did not. Mr. Freeman was found to have violated prison rules and was disciplined with 30 days of administrative segregation. While in administrative segregation, Mr. Freeman was forced to sleep on a one inch thick mattress in a room that had walls covered with semen stains and that was infested with poisonous spiders and flying, biting ants.

Mr. Freeman appealed this determination on March 31, 2004, arguing that there was no "independent review" of the charges undertaken prior to the hearing as required by the Code of Penal Discipline ("COPD"), that the evidence was not sufficient to support a conviction because Officer Clark did not see the beginning of the incident, and that Mr. Freeman's rights were violated because the victim did not testify at the hearing. On April 9, 2004 Defendant Gloria Masterson upheld the conviction finding that an independent review was conducted in conformity with the COPD, that Officer Clark saw the assault itself take place, and that the COPD permits conviction without victim testimony.

On April 16, 2004, Mr. Freeman was charged by Defendant Donnie McClure with disobeying a lawful order that required him to obtain an identification card. A hearing was held on April 27, 2004 (the "April hearing") before Defendant Tappe. No witnesses were presented. Mr. Freeman was again found to have violated prison rules, and disciplined with 10 days of administrative segregation. While in administrative segregation, Mr. Freeman was again forced

to sleep on a one inch thick mattress in a room that had walls covered with semen stains and that was infested with poisonous spiders and flying, biting ants.

Mr. Freeman appealed this conviction on May 19, 2004. He argued that the charges were brought against him in retaliation for contesting the result of the March hearing, that there was never a "direct order" to him, and that he had diligently attempted to comply with the order. On June 14, 2004, Defendant Masterson upheld the conviction finding no evidence of retaliatory motive, that an order need not be a "direct order", and that the decision of the hearing officer was supported by a preponderance of the evidence.

On June 26, 2004, Mr. Freeman was transferred to the Colorado State Penitentiary ("CSP"). Upon his arrival, Defendant Jo Jiminez, a female corrections officer, performed and video taped a strip search of Mr. Freeman. Rather than being placed in the "removed from population" administrative segregation unit, Mr. Freeman was placed in "total isolation" for 18 days. During this time he was denied all personal hygiene items, forced to sleep on the concrete floor in only his boxer shorts for four nights, and forced to walk up four flights of iron-grated stairs without any shoes while shackled.

At CSP on July 1, 2004, a disciplinary charge was filed against Mr. Freeman by Defendant Maria Bork for assault and tampering with locks or security items. A hearing was held on July 6, 2004 (the "July hearing") before Defendants Tappe, Braden, and Riggin. At this hearing, Defendant John Carroll, a case manager, was appointed to assist Mr. Freeman during the proceeding. Mr. Freeman informed Mr. Carroll that he wished to call certain witnesses in his defense, but Mr. Carroll did not tell the presiding board members about Mr. Freeman's proposed witnesses and no witnesses were ultimately presented. Mr. Freeman was found guilty and punished with 90 days loss of privileges, loss of 45 days of good time credits, and restitution in

the amount of $1,626.20.

Mr. Freeman appealed this conviction on July 28, 2004 arguing that he had been denied the right to call witnesses, denied the right to be heard in a meaningful way, and denied effective assistance. On August 27, 2004, Defendant Masterson upheld the conviction finding that Mr. Freeman did not have the right to confront Ms. Bork, his accuser, and that he did not ask to do so, that the preponderance of the evidence supported the conviction, and that Mr. Freeman was allowed to present the evidence relevant to the case.

### III.  Issue Presented

Mr. Freeman asserts the following constitutional violations: (1) that the failure to provide "proper review" pursuant to the Code of Penal Conduct at the March hearing violated his substantive and procedural due process rights; (2) that the April charges and resulting hearing was a form of retaliation for engaging in prior protected activity; (3) that the July hearing violated his procedural due process rights because he was not permitted to confront or produce witnesses; (4) that his placement in administrative segregation on each of the three occasions constituted cruel and unusual punishment in violation of the Eighth Amendment; (5) that the Defendants conspired to violated his constitutional rights; (6) that he was denied equal protection of the law; (7) that the Defendants unreasonably seized his personal property without due process of law when they confiscated his property prior to the March hearing, when he was ordered to pay $1,626.20 in restitution and when he lost 45 days of good time credit following the July hearing; (8) that he was denied access to the courts when he was placed in "total isolation" for 18 days; and (9) that his right to privacy was violated when a female guard strip

searched him   The Defendants[4] move for summary judgment on all claims.  They state several grounds—qualified immunity, failure to demonstrate personal participation by each Defendant, and because Mr. Freeman has failed to come forward with sufficient evidence to establish a prima facie claim.

## IV.    Legal Standards

### A.    Official or Individual Claims

Mr. Freeman has not specified whether he is asserting his claims against the Defendants in their individual or official capacities.  Liberally construing Mr. Freeman's Amended Complaint, the Court assumes that Mr. Freeman intended to assert both types of claims.  However, both because Mr. Freeman's claims are based on discrete acts and because he seeks no specific prospective remedy, the Court finds that no official capacity claims are cognizable.  *See Hafer v. Melo*, 502 U.S. 21, 25–27 (1991).  Thus, all claims will be considered as claims brought against each Defendant as individuals.

### B.    Personal Participation

With regard to each of Mr. Freeman's claims, he has an obligation to identify the Defendants who personally participated in the conduct giving rise to the claim.  Where that is discernable from his submissions, the Court treats the claim as being brought only against such Defendants.  Where no personal participation by any Defendant is shown, the claim will be dismissed.  *See Duffield v. Jackson*, 545 F.3d 1234, 1238 (10th Cir. 2008); *Lippoldt v. Cole*, 468 F.3d 1204, 1219 (10th Cir. 2006).

---

[4]  Because the motion does not distinguish among Defendants, the Court assumes that all Defendants assert each argument.

### C. Summary Judgment for failure to establish a prima facie claim

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

When the non-movant has the burden of proof at trial, the moving party must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### D. Qualified Immunity

The doctrine of qualified immunity protects government officials who perform

discretionary government functions from individual liability for civil damages and the obligation to defend the action. *See Johnson v. Fankell*, 520 U.S. 911, 914 (1997); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity is applicable, however, only if the official's conduct did not violate clearly established constitutional or statutory rights that would have been known by a reasonable government official. *See Harlow*, 457 U.S. at 818; *McFall v. Bednar*, 407 F.3d 1081, 1087 (10th Cir. 2005).

When a defendant asserts the defense of qualified immunity, the plaintiff must satisfy a two-part test in order to proceed. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009). A plaintiff must show that his or her constitutional or statutory right was violated (the "violation prong"), and that it was clearly established at the time of the alleged infringement that the subject conduct would violate a constitutional or statutory right (the "clearly established prong"). Although a plaintiff must ultimately establish both elements to avoid application of the doctrine, the Court has discretion to consider the elements in any order. *See Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009); *Green*, 574 F.3d at 1299.

To satisfy the violation prong, a plaintiff must show that a defendant's actions violated a constitutional or statutory right. *See Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). Identification of a constitutional right in the abstract is insufficient; instead, a plaintiff must precisely articulate the right that was allegedly violated and specifically identify the defendant's conduct that violated the right.[5] *See Green*, 574 F.3d at 1300.

_____

[5] In some situations, evaluation of the violation prong is identical to assessment of whether a plaintiff has established a *prima facie* claim. If the record evidence is lacking for a viable claim, the Court elects to enter summary judgment for the Defendants, but with recognition that such determination would also entitle them to the protection of qualified immunity.

Under the clearly established prong, the plaintiff must show that it was clearly established that conduct similar to that in the subject case would violate the identified right. *Brosseau v. Haugen*, 543 U.S. 194, 199–200 (2004).  In other words, the inquiry is whether a person in the shoes of a defendant have had notice that his or conduct would violate Mr. Freeman's constitutional rights.  Typically, that inquiry is resolved by examining whether, on the operative date, there was binding authority from the Supreme Court or Tenth Circuit (or the clear weight of authority from other circuits) that recognized that the particular conduct alleged in this case would constitute a violation of federal law.  *York v. City of Las Cruces*, 523 F.3d 1205, 1211–12 (10th Cir. 2008).  This does not require a previous case with identical facts; the question is whether prior case law sufficiently put the defendants on notice that the conduct alleged in this case would be unconstitutional or violate federal law.  *See Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006).  This is a legal question determined by application of an objective standard.  *See Crawford-El v. Britton,* 523 U.S. 574, 589-90 (1998).

## V.    Analysis

### A.    Due Process Claims[6]

1.    Administrative detention following March and April Hearings at FCF and transfer to and initial detention at CSP

---

[6]  Mr. Freeman challenges his disciplinary hearings on due process grounds and challenges the imposition of penalties against him, namely the loss of 45 days of good time credits and the requirement that he pay $1626.60 in restitution, on Fourth Amendment grounds. Any Fourth Amendment violation, however, is subsumed by the due process claim because if the penalties were imposed in a constitutional proceeding, they were reasonable.  Accordingly, the Court addresses only the due process claim.

Mr. Freeman contends that his procedural due process rights[7] were violated during the March and April hearings, and that as a result, he was sentenced to confinement in administrative segregation.[8]

The Fourteenth Amendment guarantees due process when an individual is deprived of life, liberty, or property. *See Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000); *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). Thus, as a predicate to a claim that his due process rights were violated, Mr. Freeman must first establish that he had a liberty or property interest that was subject to protection.

An inmate does not have all of the liberty or property interests that are enjoyed by ordinary citizens. Because an inmate's liberty in prison is restricted, a change in his or her

---

[7] Although Mr. Freeman states that his substantive due process rights were violated, he complains only of the process by which he was convicted in the March and April hearings. Accordingly, the Court only addresses Mr. Freeman's due process claim regarding the March and April hearings.

[8] It appears that this claim may be barred by the doctrine established in *Heck v. Humphrey*, 512 U.S. 477 (1994), and expanded on in *Edwards v. Balisok*, 520 U.S. 641 (1997), and *Muhammad v. Close*, 540 U.S. 479 (2004). In *Heck*, the Supreme Court set forth the basic principle that a state prisoner may not bring a claim for damages under section 1983 if resolution of such claim in favor of the prisoner would necessarily implicate the validity of the conviction or sentence unless the conviction or sentence has been invalidated by the state courts or on habeas review. *See* 512 U.S. at 487. In *Edwards*, the Supreme Court determined that this principle applied to prisoners challenging prison disciplinary proceedings when the challenge would imply that the proceeding's result was invalid. *See* 520 U.S. at 646–48. However, as explained by *Muhammad*, the *Heck* rule does not apply categorically to all challenges to prison disciplinary proceedings—rather, a prisoner can bring a section 1983 claim regarding prison disciplinary proceedings as long as it does not implicate the validity of those proceedings. *See* 540 U.S. at 751.

The Defendants have not raised *Heck* as a defense. As there is some indication that *Heck* is not jurisdictional, the Court declines to *sua sponte* dismiss the claims as barred by *Heck*, instead addressing the merits of the claims. *See Jiron v. City of Lakewood*, 392 F.3d 410, 413 (10th Cir. 2004) (noting that *Heck* is not jurisdictional). *But see Roberts v. O'Bannon*, 199 Fed. App'x 711, 713–14 (10th Cir. 2006) (affirming *sua sponte* dismissal of claims pursuant to *Heck*).

classification or assignment to administrative segregation ordinarily does not impinge upon his liberty interest. *See Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006); *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). However, an inmate has a liberty interest in his right to be free from conditions of confinement that impose an "atypical and significant hardship" relative to the ordinary incidents of prison life. This means that an inmate is only entitled to due process based on a liberty interest where a penalty to be implemented creates such a hardship (and, in turn, the protectible liberty interest).

Whether a particular confinement imposes an "atypical and significant hardship" on the inmate is determined by consideration of the degree and duration of the confinement. *See Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 11339 (10th Cir. 2007) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Trujillo*, 465 F.3d at 1225. In assessing confinement conditions, relevant factors include whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement; and (4) the placement is indeterminate. *See DiMarco*, 473 F.3d at 1342.

Mr. Freeman complains of three specific confinements. As a result of the March hearing, he received 30 days confinement to administrative segregation at FCF. As a result of the April hearing, he received 10 days confinement to administrative segregation at FCF. At CSP, he was placed in "total isolation" for 18 days upon his arrival. Mr. Freeman has not demonstrated that his assignment in any of these contexts constituted an atypical and significant hardship sufficient to create a liberty interest in the avoidance of such confinement.

With respect to the 30-day and 10-day confinements at FCF, the confinements were punishment for wrongdoing Mr. Freeman was alleged to have committed, and, therefore, related

11

to legitimate penological interests. They did not increase the duration of Mr. Freeman's sentence, and they were imposed for determinate amounts of time.[9]  Although Mr. Freeman states that he was forced to sleep on a one inch thick mattress in a room with poisonous spiders and biting ants, which was undoubtedly uncomfortable, there is no showing that these conditions differed substantially from those experienced by other inmates at FCF.   Even treating such conditions as extreme, they are outweighed by the other factors that weigh in favor of a finding that no liberty interest was adversely impacted.  Thus, assuming the validity of his complaints about the March and April hearings, Mr. Freeman was not entitled to greater procedural rights than he was accorded.

    With regard to CSP, Mr. Freeman states that he was detained in "total isolation" upon his arrival at CSP for 18 days (five of which he was provided only underclothes and was forced to sleep on a concrete floor), and was forced to climb grated steps while shackled and barefoot. Construing his allegations broadly, the Court understands him to complain that there should have been a hearing prior to his transfer or his initial confinement at CSP.

    Ordinarily, prison officials have discretion to transfer prisoners for whatever reason or for no reason at all, without impacting a liberty interest that triggers a right to due process.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  However, this general precept may be modified if the facility to which a prisoner is transferred has conditions that would be considered an atypical,

---

    [9]  An extended confinement to administrative segregation can alone cause a confinement to be an atypical and significant hardship.  *See Payne v. Friel*, 266 Fed. App'x 724, 728 (10th Cir. 2008) (unpublished) (citing *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999)).  A duration of thirty days (or less), however, is not alone sufficient to create such a liberty interest.  *See Sandin*, 515 U.S. at 486.  Mr. Freeman has not demonstrated that his confinements were significantly longer than those imposed on other inmates.  Thus, the duration of Mr. Freeman's confinement to administrative segregation is not sufficient, standing alone, to create a liberty interest.

significant hardship relative to the ordinary incidents of prison life.[10]

In *Wilkinson v. Austin*, 545 U.S. 209, 223–24 (2005), the Supreme Court determined that a prisoner's liberty interest was violated when he was housed at Ohio's supermax facility without some procedural due process protections. The Supreme Court found that the incidents of confinement to the supermax facility, when taken in combination, were sufficient to constitute an atypical and significant hardship. The Court noted that at the supermax facility, almost all human contact was prohibited, including conversations between cells, the lights are on for 24 hours, and exercise is for only an hour a day in a small indoor room. Although these conditions were similar to constitutionally permissible solitary confinement, the Court found two additional factors significant: (1) placement was indefinite and reviewed only annually, and (2) placement at the supermax facility disqualified a prisoner from parole consideration. The Tenth Circuit has interpreted *Wilkinson* as requiring courts to look to a variety of factors, discussed *supra*, in determining whether a liberty interest is impacted. *See DiMarco*, 473 F.3d at 1340–42.

There is no evidence as to the purpose behind Mr. Freeman's transfer or placement "in total isolation" upon his arrival at CSP. Again, the conditions described were undoubtedly unpleasant and may have bordered on extreme, but they are not analogous to those described in *Wilkinson.* The placement "in total isolation" was short, and it did not increase the duration of Mr. Freeman's confinement. There is no evidence comparing the conditions of which Mr. Freeman complains to those imposed on the general population at CSP, nor anything that would give credence to Mr. Freeman's conclusory statement that the conditions he experienced were

---

[10] Mr. Freeman makes some reference in his response brief that he was subjected to administrative segregation for five years, but does not tie this to his placement at CSP, nor provide any additional information on which the Court could evaluate his placement. Notably, the Court's current address of record for Mr. Freeman is at the Sterling Correctional Facility.

"far worse" than those of other inmates. On this record, the Court cannot find that either the transfer to CSP (and its general conditions) or the conditions Mr. Freeman experienced after his arrival created such an atypical or significant hardship as to impact a liberty interest.[11] *See Jordan v. Fed. Bureau of Prisons*, 191 Fed. App'x 639, 650–51 (10th Cir. 2006). Thus, Mr. Freeman has not come forward with sufficient evidence to state a *prima facie* claim for denial of due process. Summary judgment is therefore entered in favor of the Defendants on Mr. Freeman's denial of due process claims arising from his hearings at FCF and transfer to CSP.

2.     July Hearing at CSP

Mr. Freeman also contends that he was denied due process in his July hearing at CSP because he was unable to call witnesses on his behalf. As a result of this hearing, Mr. Freeman lost certain privileges for 90 days, lost 45 days of good time credits, and was ordered to pay $1,626.60 in restitution.

Generally, when a prison disciplinary hearing results in the loss of good time credits, the prisoner is entitled to certain procedural protections as part of the process. However, because disciplinary proceedings are not the same as a criminal prosecution, the process to which an inmate is entitled is not as comprehensive as that guaranteed to a criminal defendant. An inmate is entitled to (i) advanced written notice of the charges against him; (ii) the opportunity, if consistent with institutional safety and correctional goals, to call witnesses and present evidence in his defense; (iii) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action; and (iv) that the conviction be supported by some evidence in the

---

[11]  This is true of both the five days that Mr. Freeman allegedly spent with only underclothes and without a mattress and the 18 days that Mr. Freeman allegedly spent in "total isolation."

record.  *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985);

*Mitchell v. Maynard*, 80 F.3d 1433, 1444–45 (10th Cir. 1996).

Mr. Freeman states that Defendants Tappe, Braden, and Riggin, as the three-member

board presiding over the hearing, and Defendant Carroll, as his representative[12] at the hearing,

deprived him of the opportunity to call witnesses in his defense and that he was convicted

without sufficient evidence.  Mr.  Freeman states that he told Mr. Carroll that he wished to call

certain witnesses but that Mr. Carroll did not assert Mr. Freeman's desire at the hearing.  This is

sufficient, in the absence of evidence of disciplinary or security concerns justifying exclusion of

witnesses, to establish a violation of Mr. Freeman's due process rights by Mr. Carroll, but not the

other Defendants.  In other words, because Mr. Carroll allegedly did not advise the hearing

officers of Mr. Freeman's desire to call witnesses, the hearing officers cannot reasonably be held

liable for failing to afford Mr. Freeman a procedural protection they were not aware he had

requested.  As to the hearing officer Defendants, then, there is insufficient evidence to support a

prima facie claim, and therefore summary judgment is granted in their favor.

As to Mr. Carroll, the question is whether he is entitled to qualified immunity.  Here, the

analysis for summary judgment purposes satisfies the violation prong.  As noted by the cases

---

[12]  Mr. Freeman also alleges that he was denied the effective assistance of counsel in this hearing because Mr. Carroll did not adequately articulate that Mr. Freeman wished to call Ms. Bork as a witness.  However, prisoners do not have a right to either retained or appointed counsel in prison disciplinary hearings.  *See Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 570 (1974)).  Accordingly, there can be no claim for ineffective assistance of counsel for prison disciplinary proceedings.  *See id.*; *Williams v. Rice*, 166 F.3d 350 (Table), 1998 WL 863982, at * (10th Cir. Dec. 14, 1998) (unpublished) (concluding that an inmate's claim of ineffective assistance of counsel by an inmate representative was without merit because minimum due process does not require the assistance of counsel in disciplinary hearings); *Figueroa v. Vose*, 57 F.3d 1061 (Table) (1st Cir. Jun. 13, 1995) (unpublished) (concluding that because there is no right to counsel at disciplinary hearings, an inmate has not cause of action for a staff assistant's ineffective assistance).

cited above, an inmate's right to call witnesses in a hearing that could result in deprivation of good time credits under these circumstances was clearly established at the time of the events at issue here. Therefore, Mr. Carroll is not entitled to qualified immunity.

**B.    Retaliation Claim**

Mr. Freeman contends that the charges that were the subject of the April hearing were brought in retaliation for his exercise of his constitutional rights. To establish a *prima facie* claim for retaliation under section 1983, a plaintiff must demonstrate that: (1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused him to suffer an injury sufficient to chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially based on his exercise of a constitutionally protected right, *i.e.*, there was a causal connection between the protected activity and the defendant's adverse conduct. *See Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 847 (10th Cir. 2005).

Mr. Freeman contends that the April charges were brought against him in retaliation for his refusal to inform on a prison staff member, his report of incidents of harassment to prison authorities, and his contest of the procedural sufficiency of the March hearing. Mr. Freeman asks the Court to infer a retaliatory motive from the temporal proximity between his protected activity and the initiation of the charges against him.

In other contexts, courts have explained that, in order to establish a causal connection based on temporal proximity alone, the protected activity must be very close in time to the retaliatory conduct. *See Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006). As to the first two actions—the refusal to inform on a prison staff member and the report of harassment to prison authorities—Mr. Freeman has presented nothing that establishes when

these actions occurred. Accordingly, their temporal proximity to the April charges cannot be assessed, and no causal connection can be inferred.[13]

As to the third action, the temporal proximity might suggest retaliatory motive. Mr. Freeman appealed the determination of his March hearing on March 31, 2004. The charges giving rise to the April hearing were made on April 16, 2004 for conduct occurring on April 15, 2004.[14] However, Mr. Freeman did not have a constitutional right to appeal from the determination made at the April hearing.[15] As a consequence, his appeal was not a constitutionally protected activity that would give rise to a retaliation claim.

In the absence of sufficient facts to establish a retaliation claim, summary judgment is entered in favor of the Defendants.

### C.    Eighth Amendment Claims

Mr. Freeman also argues that his placement in administrative segregation at FCF and isolation at CSP constitutes cruel and unusual punishment prohibited by the Eighth Amendment. An Eighth Amendment claim has both an objective component—an examination as to whether the deprivation is sufficiently serious—and a subjective component—an examination as to whether the official responsible for the conditionsacted with a sufficiently culpable state of mind. *See Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 809 (10th Cir. 1999) (citing *Wilson v. Seiter*,

---

[13] It also may be that these are not constitutionally protected activities.

[14] A span of approximately two weeks between the appeal and the allegedly retaliatory action has been found sufficient to demonstrate a causal connection. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)

[15] The March hearing was a disciplinary hearing. Regardless of whether the penalty impacted a liberty interest, Mr. Freeman's due process rights did not include a right of appeal. *See Hill*, 472 U.S. at 454; *Mitchell*, 80 F.3d at 1444–45.

501 98–99 (1991).

As to the objective component, the Eighth Amendment prohibits the unnecessary and wanton infliction of pain, sentences that are grossly disproportionate to the severity of the crime, or conditions that result in an unquestioned and serious deprivation of basic human needs. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441–42 (10th Cir. 1996). Thus, prisons must provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm. *See Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). When determining whether there has been a violation of the Eighth Amendment, courts look to the conditions of confinement as a whole, *i.e.*, analyzing all deprivations in combination. *See Mitchell*, 80 F.3d at 1442. The subjective standard is one of deliberate indifference to inmate health or safety. *See Perkins*, 165 F.3d at 809 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A court may infer that a prison official knows of a substantial risk if the risk was obvious.

Assuming, without determining, that the objective component was satisfied by the conditions Mr. Freeman describes, the record contains no evidence that any named Defendant knew of the conditions of Mr. Freeman's confinement in administrative segregation nor saw obviously inhumane conditions. As to CSP, the record is devoid of any evidence as to who determined or oversaw the conditions of his confinement in segregation. As to FCF, there is evidence that some Defendants were involved in the hearings in which Mr. Freeman was found to have violated prison rules and procedures, but no evidence establishes that they directed that Mr. Freeman be subjected to anything more than "administrative segregation." Without a showing that any named Defendant either created the allegedly unconstitutional conditions in the administrative segregation unit or was aware that Mr. Freeman would be subjected to

unconstitutional conditions in that unit, Mr. Freeman has failed to come forward with evidence that any Defendant personally participated in any alleged Eighth Amendment violation relating to the conditions in adminstrative segregation.  Thus, all Defendants are entitled to summary judgment on the Eighth Amendment claim.

### D.        Conspiracy Claim

Without much specificity, Mr. Freeman generally alleges that the Defendants conspired to violate his constitutional rights.  To establish a *prima facie* claim, Mr. Freeman must offer evidence for each of  the elements of a civil conspiracy: (1) a combination of two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate cause thereof. *See Orient Mineral Co. v. Bank of China*, 506 F.3d 980, 1004 (10th Cir. 2007).

Mr. Freeman's assertions of a conspiracy are speculative and conclusory.  He has not offered any factual basis from which the Court can infer that any Defendants conspired with each other or anyone else.  Because no *prima facie* claim has been shown, the Defendants are entitled to summary judgment in their favor.

### E.        Equal Protection Claim

Mr. Freeman generally contends that he was denied the equal protection of the law when, *inter alia*, the disciplinary charges were brought against him, he was retaliated against, he was confined to administrative segregation, and he was placed in total isolation.  To prove an equal protection claim, a plaintiff must demonstrate (i) that similarly situated individuals were treated differently; and either (ii) if differential treatment was based on a suspect classification or fundamental right, that it was not supported by a compelling governmental interest or (iii) if the differential treatment was not based on a suspect classification or fundamental right, that the

treatment was not justified by a rational connection to a legitimate state interest. *See Kleinsmith v. Shurtleff*, 541 F.2d 1033, 1047 (10th Cir. 2009).

Mr. Freeman's conclusory statement that he was treated differently from other similarly situated prisoners is not sufficient to establish the first element. He does not specifically identify any similarly situated individuals nor articulate any specific differential treatment. In the absence of a *prima facie* claim, the Defendants are entitled to summary judgment in their favor.

## F.    Access to Courts Claim

Mr. Freeman contends that his placement in administrative segregation and total isolation at CSP for 18 days deprived him of his constitutional right to access the courts. To prove a denial of right of access to the courts claim, an inmate must state facts that demonstrate a prejudice to him in pursuing litigation. *See Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996).

Mr. Freeman has not offered no evidence that would establish that his access to the courts was impaired  as a result of his confinement to administrative segregation. He has not identified any proceeding, claim, or argument that he was unable to pursue or participate in because he was in total isolation at CSP. In the absence of a *prima facie* claim, the Defendants are entitled to summary judgment on this claim.

## G.    Right to Privacy Claim

 Mr. Freeman argues that his right to privacy was violated when Defendant Jo Jiminez, a female, strip searched him. He does not complain about the search being a strip search, only that it was conducted by a woman.

Although incarcerated, inmates retain some rights to privacy. *See Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002). Such rights, however, may be compromised to maintain security. Generally, the constitutionality of a prison's regulations or actions is judged by

whether the prison regulation or action is reasonably related to legitimate penological interests. *See id.* (citing *Turner v. Safeley*, 482 U.S. 78, 89 (1987)).

With respect to strip searches, a court must balance of the need for a particular search against the invasion of personal rights that the search entails. In balancing these interests, a court considers the manner of the search, the justification for conducting the search, and the place where the search is conducted. *See id.* (citing *Bell v. Wolfish*, 441 U.S. 520 559 (1979)). Although a prison is not required to conduct searches in a manner that results in the least amount of intrusion, it cannot completely ignore a prisoner's privacy rights when conducting searches. *See id.*

Mr. Freeman acknowledges that a strip search was appropriate. His complaint is that it was unconstitutional for it to be conducted by a woman. He contends that an opposite-sex strip search violates Colorado Department of Corrections Administrative Regulation 300-06. The Defendants do not dispute the existence of the regulation, its provisions, or that the search of Mr. Freeman was in violation of it. Thus, the Court finds that there was a violation of an administrative regulation.

However, a regulatory violation does not necessarily equate to a constitutional violation. *See Flanagan v. Munger*, 890 F.2d 1557, 1571 (10th Cir. 1989). Put differently, absent a showing that the rights given to an inmate in the Colorado regulation is coextensive with the outer boundaries of an inmate's constitutionally-protected privacy interests, the violation of the regulation does not necessitate a finding that a constitutional right has been infringed.

Neither party has addressed whether an inmate has a constitutional right to be free from a strip search conducted by a person of the opposite sex. Assuming, without deciding, that Mr. Freeman had a constitutional right to be free from such a search, the question for purposes of the

application of qualified immunity is whether such right was clearly recognized.

The parties have offered no case authority, and the Court has found none, addressing the particular conduct at issue here—a strip search performed by a person of the opposite sex. Turning to recognized authority in *Farmer*, 288 F.3d 1254, it is clearly established that inmates retain at least a limited right to privacy and that, in the context of strip searches, such right must be balanced against the prison's penological interests taking into account a the manner of the search, the justification for conducting the search, and the place where the search is conducted. Such balancing test is not sufficiently specific to put a reasonable officer on notice that an otherwise appropriate strip search becomes unconstitutional if conducted by a person of the opposite sex. Because such right, if it exists, was not clearly established at the time Defendant Jiminez searched Mr. Freeman, Defendant Jiminez is entitled to qualified immunity.

**IT IS THEREFORE ORDERED** that:

(1)    The Defendants' Second Motion for Summary Judgment **(#237)** is **GRANTED IN PART** and **DENIED IN PART**.

(2)    **SUMMARY JUDGMENT IS GRANTED** in favor of the Defendants and against Mr. Freeman is entered on the following claims: Mr. Freeman's procedural due process claims regarding the disciplinary hearings held on March 17, 2004 and April 27, 2004; Mr. Freeman's claim that the April hearing was in retaliation for engaging in protected activity; Mr. Freeman's claim that his placement in administrative segregation at either FCF or CSP constituted cruel and unusual punishment in violation of the Eighth Amendment; Mr. Freeman's claim that the Defendants conspired to violated his constitutional rights; Mr. Freeman's claim that he was denied equal protection of the laws; Mr. Freeman's

claim that he was denied access to the courts.

(3)     Mr. Freeman's claim that Defendant Jo Jiminez violated his right to privacy when

she performed an opposite sex strip search on him at CSP is **BARRED** by the

doctrine of qualified immunity.

(4)     The Motion for Summary Judgment is **DENIED** as to Mr. Freeman's claim

against Defendant Carroll for violation of Mr. Freeman's right to call witnesses in

the July 2004 disciplinary hearing.

Dated this 4th day of May, 2010

**BY THE COURT:**

Marcia S. Krieger
United States District Judge