IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-00405-MSK-KMT

RUSSELL EUGENE FREEMAN,

       Plaintiff,

v.

JOHN CARROLL, Case Manager III,
CHARLES TAPPE, Hearing Chair Off.,
BRIAN BRADEN, Life Safety Coord., and
BETTY RIGGIN, Lieutenant,

       Defendants.

**OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court on Plaintiff Russell Eugene Freeman's Motion for Summary Judgment (**#322**), to which the Defendants responded (**#335**), and the Plaintiff replied (**#338**). Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

### I. Jurisdiction

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### II. Background

Mr. Freeman is incarcerated in a Colorado state prison. He initiated this action in March 2006, bringing several claims related to his incarceration. After resolution of a motion for summary judgment and various amendments and clarifications of the Order granting summary judgment (**#281, #291, and #310**), only one claim remains. It is brought under the Fourteenth Amendment to the United States Constitution for denial of due process at a July 6, 2004

disciplinary hearing at which he was found guilty of two Colorado Department of Corrections ("CDOC") Code of Penal Discipline ("COPD") violations: (1) assault and (2) tampering with locks or security device. As a sanction, he lost 45 days of good time credits, 90 days of privileges, and was required to pay $1,626.20 in restitution.

A Final Pretrial Conference in this matter was held at which counsel first appeared for Mr. Freeman. For the first time certain potentially dispositive issues were raised. The parties were given leave to file additional dispositive motions, which are now fully briefed and ripe for determination.

One of those is Mr. Freeman's motion for summary judgment in his favor. In response to it, the Defendants state that Mr. Freeman is not entitled to judgment as a matter of law.

### III.   Material Facts

The Court has reviewed all of the parties' submissions. Were this a situation where the Defendants contended that there was a material factual dispute requiring a trial, the Court would construe the facts most favorably to them. But because the Defendants do not contest the evidence presented by Mr. Freeman, choosing instead to focus on how the law applies. Therefore, for purposes of this motion, the Court treats the material facts demonstrated by the evidence submitted by Mr. Freeman as undisputed. Fed.R.Civ. P. 56(e)

The incident giving rise to the disciplinary hearing occurred on June 26, 2004 at the Fremont Correctional Facility.[1] According to the Notice of Charge(s), dated July 1, 2004, the following was reported by Officer Maria Bork:

> On Saturday, June 26, 2004, at approximately 1:25 p.m., Officer

---

[1] After this incident, Mr. Freeman was moved to the Colorado State Penitentiary and placed in segregation.

> Maria Bork observed an inmate leaving the cell assigned to [Mr.
> Freeman and another inmate]. The inmate exiting the cell had
> something under his shirt. Officer Bork approached the cell and
> saw that there were (3) inmates still in the cell, including [Mr.
> Freeman] and (2) visiting inmates. Officer Bork asked the visitors
> to leave the cell and they complied. CO Bork then entered the cell
> and asked [Mr. Freeman] what was in the box. [Mr. Freeman]
> became agitated, stating "You guys just want to take all my
> fucking things." CO Bork then tried to calm [Mr. Freeman] down
> and asked him to come to the operations office to discuss the
> contents of the box. [Mr. Freeman] then came toward CO Bork
> with the box and forcibly shoved the box at her, striking her in the
> chest. [Mr. Freeman] then took an aggressive posture, yelling and
> clenching his fists at her. CO Bork then attempted to disengage by
> exiting the cell and ordering [Mr. Freeman] to stay in the cell. As
> CO Bork closed the cell door with her key set, [Mr. Freeman]
> blocked the door from closing with his body and exited the cell.
> CO Bork raised up her right hand at [Mr. Freeman's] stomach-
> level to stop his attack. [Mr. Freeman] then pushed her with his
> body into the 2nd tier railing fronting the cell, causing Officer
> Bork's back to strike the railing with considerable force. [Mr.
> Freeman] then left the area. CO Bork followed and observed [Mr.
> Freeman] next to the CH8 entry talking to Sgts. Bell and
> McMorran. She immediately reported what had transpired earlier
> and that [Mr. Freeman] needed to cuff up. [Mr. Freeman] then
> lunged toward CO Bork in an aggressive manner and Sgt.
> McMorran stepped between [Mr. Freeman] and CO Bork. [Mr.
> Freeman's] left hand was cuffed by CO Bork when he pulled away
> from her, causing injury to her right hand. Security staff
> responded and finally restrained [Mr. Freeman's] right hand. [Mr.
> Freeman] was then escorted out of the area by security staff and
> placed on RFP status.

Notice of Charge(s), Exh. 2 to Pl.'s Mot. for Summ. J, #**322-2**.

The Notice informed Mr. Freeman that he was being charged with two COPD violations: (1) Assault and (2) Tampering with Locks or Security Items. *Id*. The Notice advised Mr. Freeman that a hearing on the charges would be held on July 6, 2004, and that "If representation is desired, report to hearing 10 minutes early." *Id*. The section of the Notice entitled "Names of Witnesses to Violation" is blank, but it states that "If you desire witnesses, in accordance with

the Code of Penal Discipline, please notify the Reviewing Supervisor as soon as possible, but no later than 24 hours prior to scheduled hearing, to avoid a continuance." *Id*. The Reviewing Supervisor is identified as Lt. Darryl Directo.

Mr. Freeman signed for receipt of the Notice and indicated that he desired an inmate representative at the hearing, but there is no evidence that Mr. Freeman notified Lt. Directo that he desired to call witnesses or who they were.[2]

The disciplinary hearing occurred on July 6, 2004. Just prior to the hearing, Mr. Freeman learned that Defendant Carroll would serve as his inmate representative; they conferred before the hearing began. Mr. Freeman he told Mr. Carroll that he wanted certain witnesses be present. Mr. Freeman states that Mr. Carroll said that his only role was to ensure that Mr. Freeman's constitutional rights were observed, not to advocate on Mr. Freeman's behalf.

The hearing board consisted of Defendants Tappe, Braden, and Riggin. The hearing was taped and transcribed. According to the transcript, Mr. Freeman was informed if his right to request representation, witnesses[3], and continuances. Exh. 4 to Pl.'s Mot. for Summ. J., **#322-3** at 3. He was also informed of the charges and of the possible sanctions. The following colloquy then occurs:

---

[2] Mr. Freeman states that this occurred because he was in segregation and was not able to speak with possible witnesses.

[3] This is consistent with the Code of Penal Discipline that provides that an accused inmate "should have the right to request the testimony of witnesses" at a disciplinary hearing. Dep't of Corr. Reg. No. 150-01(IV)(E)(3)(j)(2004) (attached as Exh. 1 to Pl.'s Mot. for Summ. J., **#322-1**). Specifically, an accused offender "may request testimony of persons . . . who witnessed and/or investigated the violations charged, whenever feasible, except when an offender witness refuses to appear or testify." *Id*. Requested witnesses may be excluded for security reasons, however.

4

> The Chairman: At the time that you were served with the notice of charges you did request a rep and you did not request witnesses; is that correct?
>
> Mr. Freeman: I did request a witnesses [sic].
>
> The Chairman: Okay. There are no witnesses listed on the summary of the notice of charge. However, if you have a witness request, you can request them when you're giving testimony. Okay? Do you understand that?
>
> Mr. Freeman: (No audible response.)

*Id*. at 5.

Mr. Freeman pled not guilty to the charges. Lieutenant Directo presented the case against Mr. Freeman, reciting more or less the same facts contained in the Notice of Charge(s). Lieutenant Directo explained that Officer Bork went to the hospital for treatment as a result of the incident, and submitted a memorandum from Patsy Michaud, Risk Management Case Manager that recited that Officer Bork's injuries from the incident had resulted in costs of $1,626.20.

Mr. Freeman was then told the following: "At this time, Mr. Freeman, you may make a statement regarding your plea. You may ask for witnesses to present evidence or give testimony if you wish." *Id*. at 9-10. In response, Mr. Freeman stated "I'd like to talk to some witnesses first. This here doesn't say what injuries were caused. She could have got in a car accident or something." *Id*. at 10. The Chairman responded "Okay. Go ahead and present your case, then Mr. Freeman." *Id*. Mr. Freeman then explained his version of what occurred and questioned several aspects of Officer Bork's account. He emphatically denied touching Officer Bork in any way. The Chairman then asked, "Okay. You presented that already. Is there anything new that you want to present?" *Id*. at 15. Mr. Freeman then questioned Lieutenant Directo, including

questions about which witnesses he had interviewed[4] and whether any witnesses had told him that they had heard a scuffle occur. After that, the hearing wrapped up with the following exchanges:

>The Chairman: Anything else you want to present?
>
>Mr. Freeman: I just want to know if this woman would take a polygraph test? I'll get it paid for if she wants to take a test, to say that I actually did this, because I did not touch this woman. I'm willing to take one. I'm willing to pay for both of them.
>
>The Chairman: All right. Anything else?
>
>Mr. Freeman: I'd like to know why she didn't push the panic button, too, if I was supposed to have did this to her?
>
>The Chairman: Okay.
>
>Mr. Freeman: Because that's another inconsistency that's in here with regards to this whole deal here.
>
>The Chairman: Anything else?
>
>Mr. Freeman: Something that she didn't mention was when she was at the door, how come she never charged me – how come I'm not charged with unauthorized possession –
>
>The Chairman: I'm not going to deal – I'm not going to deal with what you're not charged with.
>
>Mr. Freeman: These were other issues that she brought up –
>
>The Chairman: Alright, Mr. Freeman, anything new that you want to present?
>
>Mr. Freeman: No, man.

*Id*. at 17-19.

---

[4]Specifically, Mr. Freeman asked if Lieutenant Directo had interviewed Tyree Kirk, an inmate who had been in the cell before the incident, and Lance Spurlock, a CDOC staff member. Lieutenant Directo indicated he had not interviewed these individuals.

No further testimony was taken before the board considered its decision. It found Mr. Freeman guilty of both charges. *Id*. at 20-21. He was sanctioned with 90 days loss of privileges and 45 days off of good time and charged $1,626.20 for restitution.[5] *Id*. at 21.

The decision was memorialized in a written form entitled "Disposition of Charges." Exh. 6 to Pl.'s Mot. for Summ. J., **#322-4**. In that document, the hearing board stated that the assault conviction was based on the findings that Mr. Freeman "applied physical force against Officer Maria Bork by pushing her into a rail outside of his assigned cell, and by forcefully pushing a box of paints into her chest, and by pulling away from her as she was attempting to hand cuff him." *Id*. The tampering conviction was based on the finding that Mr. Freeman "prevented his cell door from closing by blocking it with his body after Officer Maria Bork told him to remain in his cell. By doing so, Freeman prevented the security door from functioning as designed." *Id*. The evidence relied upon was Officer Bork's written statement, the presentation by Lieutenant Directo, and Mr. Freeman's testimony. *Id*.

Mr. Freeman administratively appealed, but his conviction was upheld. He also appealed his conviction to a Colorado District Court pursuant to C.R.Civ.P. 106, and the Colorado Court of Appeals, but did not prevail.

## IV.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs

---

[5]He also was sanctioned with 90 days loss of privileges for the conviction of tampering with locks, to run concurrently with the assault sanctions.

what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

When the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

## V.  Analysis

### A.  Due Process Requirements of a Prison Disciplinary Proceeding

The Due Process clause guarantees due process when an individual is to be deprived of life, liberty, or property. *See Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir.

2000). In order to prove that a denial of due process occurred, a plaintiff must establish that: (1) he or she possess ed a protected liberty or property interest such that the due process protections were applicable; and that (2) he or she was deprived of the appropriate level of process due. *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009). Mr. Freeman, as the plaintiff, has the burden of proof to establish both elements of his claim.

### B. Protected Liberty or Property Interest

The Defendants do not dispute that Mr. Freeman has a protected property interest in his prison funds, against which the restitution is charged. Although there remains significant dispute about whether he had a protected liberty interest in the good time credits that were deducted as a result of his conviction, the issue need not be resolved for the purposes of the pending motion. The Court will assume, without deciding, that there is a protected interest entitling him to due process in accordance with *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974).

### C. Adequate Process

Mr. Freeman contends that 1) he was not provided notice that restitution was a sanction that could be imposed; 2) he was denied the right to call witnesses; 3) he was not allowed to complete his testimony; 4) he did not receive adequate assistance from Mr. Carroll; 5) he did not receive adequate explanation of the decision and there was insufficient evidence to support the determination of his guilt.

Before turning to each specific complaint, it is important to note that an inmate in a prison disciplinary proceedings is not entitled to the same due process protections as are guaranteed to a criminal defendant. An inmate is entitled to 1) advance written notice of the charges against him; 2) the opportunity, if consistent with institutional safety and correctional goals, to call witnesses and present evidence in his defense; 3) a written statement by the

9

factfinder of the evidence relied on and the reasons for the disciplinary action; and 4) that the conviction be supported by some evidence in the record. *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974)); *Mitchell v. Maynard*, 80 F.3d 1433, 1444–45 (10th Cir. 1996).

### 1. Authority to Impose Restitution and Notice of Restitution Sanction

Mr. Freeman first argues that the CDOC does not have express *statutory* authority to impose restitution as a disciplinary sanction, although sanctions are permitted by CDOC administrative regulations. Dep't of Corr. Reg. No. 150-01(IV)(E)(3)(p)(2004) (providing that "[r]estitution may be ordered on any [disciplinary] charge for the value of service or property.").

Under Colorado law, the CDOC "has broad discretion over the classification and rehabilitation of inmates and the management of prisons." *Reeves v. Colorado Dept. of Corrections*, 155 P.3d 648, 651 (Colo. App. 2007) (citing C.R.S. §17–1–103, which outlines the authority of the CDOC executive director, and § 17–1–111, which removes from judicial review under the Administrative Procedure Act all CDOC provisions relating to the placement, assignment, management, discipline, and classification of inmates). Thus, "absent a statutory or constitutional violation, courts generally do not intervene in matters of prison administration and defer to the DOC in the management of penal institutions." *Powell v. Colo. Pub. Utils. Comm'n*, 956 P.2d 608, 614 (Colo. 1998).

That restitution is authorized here by administrative regulation rather than by statute does not demonstrate that the CDOC is acting in violation of any statute or constitutional provision, given the broad grant of discretion and lack of statutory limitation in this regard. Mr. Freeman cites no authority to show that the imposition of restitution as a disciplinary sanction, after a

hearing, is prohibited by state or federal law in these circumstances.[6]

Alternatively, Mr. Freeman argues that he was not given adequate notice of the possibility that a restitution sanction might be imposed, and that this violated the notice requirement of *Wolff*. This argument has been squarely rejected by a division of the Colorado Court of Appeals in *Burns v. Executive Director, Colorado Department of Corrections*, 183 P.3d 695, 698 (Colo. App. 2008), which held that the COPD itself provides adequate notice to the prisoner that officials could impose restitution as a sanction for any disciplinary violation. *See also White v. Golder*, 245 Fed.Appx. 763, 764 (10th Cir. 2007) (under *Wolff*, "notice of potential penalties is not one of the requirements of due process"); *McMillan v. Healey*, 739 F.Supp. 153, 157 (S.D.N.Y. 1990) (same). The Court agrees with the reasoning of these cases and concludes that *Wolff* does not require specific advance notice to the inmate of all potential penalties in a disciplinary proceeding. In addition, notice of possible penalties is given in the COPD when it provides that restitution could be imposed as a sanction for "any charge."

### 2.     Opportunity to Call Witnesses and Present Other Evidence

As noted above, *Wolff* requires that an inmate in a disciplinary proceeding be given "the opportunity, if consistent with institutional safety and correctional goals, to call witnesses and present evidence in his defense." Mr. Freeman contends he was denied this opportunity.

---

[6]The cases Mr. Freeman cites are inapplicable to these circumstances. The primary case he relies on, *Sell v. Parratt*, 548 F.2d 753 (8th Cir. 1977), involved the summary confiscation of prisoners' actual monies, which were not thereafter kept in trust for the inmates in inmate accounts, without any process at all; moreover, the applicable statute explicitly limited disciplinary sanctions to loss of privileges, reduction of good time, and disciplinary segregation. Here, by contrast, the CDOC's discretion is not limited by statute, and restitution is only imposed as a sanction after a disciplinary hearing. Similarly, *Quick v. Jones*, 754 F.2d 1521 (9th Cir. 1984) involved a restitution deduction from a prisoner's inmate account where no determination was made as to the inmate's responsibility for the alleged damage, which occurred outside of the prison while the prisoner was on furlough.

11

Even construing the facts most favorably to Mr. Freeman, the record does not show that he was not told of his right to call witnesses or to seek a continuance, or that he identified witnesses, requested to call them or request for a continuance and his requests were denied. The Notice advised him that he could call witnesses, and he was advised multiple times during the hearing that he had the right to call witnesses on his behalf or to request a continuance in order to do so. He did not designate any witnesses in conformance with the Notice, nor did he complain at the hearing that there were witnesses that he wanted to call but that he had been unable to timely designate them. During the hearing, Mr. Freeman did not specifically identify any witnesses or even specifically ask that the hearing be continued so that he could obtain witnesses on his behalf. His only statement pertaining to witnesses was oblique and inspecific - that he would "like to talk to some witnesses first." In addition, this statement was made in the context of challenging the cause of Ms. Bork's injuries (that they might have been caused by a car accident) not with regard to the events that gave rise to the charges. In addition to being expressly told of his rights, Mr. Freeman was asked several times if there was "anything else" or "anything new" he wished to present. He identified nothing.[7]

Without evidence that Mr. Freeman invoked his right to call witnesses and present evidence, he cannot state a claim that he was denied the opportunity to do so. *See Grossman v. Bruce*, 447 F.3d 801, 804 n. 1 (10th Cir. 2006) (stating that inmate plaintiff "makes conclusory statements that he was improperly denied the right to present evidence and that one or more other witnesses were not called at his disciplinary hearing," but that "[h]e does not identify any

---

[7]Although Mr. Freeman now says that he wanted to call Officer Bork as a witness, he clearly knew that she was absent from the hearing. Indeed, he questioned the veracity of her report, but he never asked for a continuance to cross-examine her or anyone else.

of these other witnesses in his appellate brief, nor does he explain what evidence he was unable to introduce, making it impossible to review this claim"); *Dixon v. Goord*, 224 F.Supp.2d 739, 746 (S.D.N.Y. 2002) (no due process violation where inmate failed to identify witness sufficiently in disciplinary hearing for witness to be called). Moreover, in the absence of information as to how these witnesses would have assisted his defense, any error in this regard is harmless. *See Howard v. United States Bureau of Prisons*, 487 F.3d 808, 813 (10th Cir. 2007) (noting that "errors made by prison officials in denying witness testimony at official hearings are subject to harmless error review") (quoting *Grossman*). Thus, even construed most favorably to him, Mr. Freeman's evidence is insufficient to show a constitutional deprivation based on denial of the opportunity to present witnesses and evidence.

### 3.     Opportunity to complete testimony

Mr. Freeman also contends that his opportunity to testify was unreasonably circumscribed by the hearing board. The transcript of the hearing reflects that Mr. Freeman was interrupted and cut off a number of times in his testimony. However, a careful review of the transcript reveals that the interruptions occurred when Mr. Freeman strayed outside the facts pertinent to the two disciplinary charges. For example, the board declined to hear testimony about what Officer Bork may have said or asked during or after the incident. That is reasonable given that the charges pertained to Mr. Freeman's conduct - pushing Ms. Bork and blocking his door from closing - rather than the conversation between them. Even upon reflection and review of his testimony, Mr. Freeman points out nothing that he would have testified to had he not be been interrupted. Without a showing that Mr. Freeman was precluded from presenting material evidence, any interruption or restriction in his ability to testify was harmless.

### 4.     Inadequate assistance by Mr. Carroll

Mr. Carroll was appointed to assist Mr. Freeman at his disciplinary hearing. Mr. Freeman complains that Mr. Carroll did not provide adequate assistance because he did not obtain witnesses, request a continuance, prepare or present a defense.

Ordinarily, an inmate does not have a constitutional right to counsel in disciplinary proceedings; however, *Wolff* provides that "[w]here an illiterate inmate is involved, however, or whether the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff." 418 U.S. at 570. In addition, the COPD regulations also provide that an inmate shall be provided representation in a disciplinary hearing if he is not capable of understanding the proceedings or articulating a defense. Dep't of Corr. Reg. No. 150-01(IV)(E)(3)(m)(2)(c)(2004). In the absence of a right to a representative, a plaintiff cannot state a claim for deprivation of due process based on the quality of assistance that he received from a staff representative. *Jordan v. Wiley*, 411 Fed.Appx. 201, 209 (10th Cir. 2011). When there is a right to a representative, the representative is not obligated to do no more than what the inmate could do himself. *Jackson v. Johnson*, 30 F.Supp.2d 613, 619 (S.D.N.Y. 1998) (a prisoner's assistant at a prison disciplinary hearing is to act as merely a surrogate for the inmate, not a legal adviser or advocate).

First, Mr. Freeman has not come forward with evidence showing that he was entitled to an inmate representative under either *Wolff* or the administrative regulations. Instead, he argues that he should have been given assistance because he was in segregation prior to the hearing. The Court has some doubt as to Mr. Freeman's entitlement under those circumstances, but

resolving that in favor of Mr. Freeman, Mr. Freeman has not specified anything that Mr. Carroll should have done that he was unable to do himself.  For example, even assuming that Mr. Carroll should have but failed to provide witnesses for the hearing or advise the hearing board that Mr. Freeman wished to call witnesses, Mr. Freeman was nonetheless free to do so.  As to claims that Mr. Carroll should have presented a defense, Mr. Freeman cross-examined Lieutenant Directo, pointed out what he believed were the inconsistencies or implausibilities of the account and otherwise showed that he was able to defend against the charge.  Finally, to the extent that Mr. Freeman claims he was not able to perform investigatory tasks to prepare a defense in advance, he has failed to demonstrate any prejudice or, alternatively, any prejudice that could not have been cured by requesting a continuance.

### 5. Adequacy of Written Notice of Decision and Insufficiency of Evidence to Support the Decision

It is undisputed that Mr. Freeman was provided a written statement explaining the basis of the decision, including the evidence relied on.  Mr. Freeman argues that the written statement is inadequate because it does not explain the board's credibility determination as between Officer Bork and Mr. Freeman, who presented conflicting versions of what occurred.  Mr. Freeman also argues that Officer Bork's account, as submitted by Lieutenant Directo, was insufficient evidence to support the board's determination; similarly, he argues that the letter from Risk Management setting forth the cost of Officer Bork's medical treatment was insufficient to support the restitution sanction.

These types of challenges have been rejected by the Tenth Circuit in *Mitchell v. Maynard*, 80 F.3d 1433 (10th Cir. 1996).  In *Mitchell,* the inmate argued that his due process rights were violated because the statement relied on to discipline him was unreliable and written

findings were inadequate. *Id*. at 1445.  The Tenth Circuit noted that the purposes of the written finding is "to insure adequate review of the proceedings, to protect the inmate against collateral consequences, and to guarantee that officials, faced with outside scrutiny, will act fairly." *Id*. (quoting *Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir.1990)).  The Disposition of Charges provides an adequate basis for review of the decision, as it notes what the factual findings are and what evidence was relied upon in making the findings.  All of that evidence is presented here, including the hearing testimony and Officer Bork's written statement in the Notice of Charge(s).  This evidence supports the decision and, as noted by the Tenth Circuit in *Mitchell*, "it is not [the Court's] job to address the validity of that evidence." *Id*.

Similarly, Lieutenant Directo's testimony that Officer Bork received medical treatment as a result of the incident with Mr. Freeman and the letter identifying the cost of Officer Bork's treatment amount to "some evidence" supporting the restitution charge.  A disciplinary committee's decision can be upheld even if the evidence supporting the decision is "meager." *Hill*, 472 U.S. at 457.  Mr. Freeman's objections to the letter are that it was not formally introduced into evidence and that it was unreliable because it did not detail the injuries suffered by Officer Bork.  These are issues that go beyond the scope of the requirements of *Wolff* and *Hill* and do not demonstrate constitutionally inadequate process as to the evidentiary basis of the decision and sanction.

## VI.  Effect of the Failure to Make a Prima Facie Showing

The undisputed material facts are insufficient to establish a *prima facie* claim of denial of due process.  Accordingly, Mr. Freeman is not entitled to summary judgment in his favor. In addition, there appears to be no need for a trial.  Pursuant to Fed. R. Civ. P. 56(f), a court may grant summary judgment to a nonmovant after giving the movant notice and a reasonable time to

respond. Therefore, unless Mr. Freeman submits additional evidence sufficient to show a *prima facie* claim, the Court will enter judgment in favor of the Defendants.

**IT IS THEREFORE ORDERED** that:

(1) Plaintiff Russell Eugene Freeman's Motion for Summary Judgment **(# 322) is DENIED**. Moreover, since Mr. Freeman's evidence appears to be insufficient to establish a *prima facie* case and there appear to be no disputed issues of material fact to be resolved at trial that would establish the elements of his claim, Mr. Freeman shall have through December 5, 2011 to present additional evidence demonstrating a *prima facie* claim, or to otherwise show cause why summary judgment should not be entered in favor of the Defendants.

Dated this 18th day of November, 2011

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge