IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-00405-MSK-KMT

RUSSELL EUGENE FREEMAN,

       Plaintiff,

v.

JOHN CARROLL, Case Manager III,
CHARLES TAPPE, Hearing Chair Off.,
BRIAN BRADEN, Life Safety Coord., and
BETTY RIGGIN, Lieutenant,

       Defendants.

## OPINION AND ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS

**THIS MATTER** comes before the Court on Plaintiff Russell Eugene Freeman's Brief in Response to the Court's Order to Show Cause (# **347**) ("Response Brief"). This brief was filed in response to an Order to Show Cause why judgment should not be entered in favor of the Defendants in accordance with Fed. R. Civ. P. 56(f) following a determination that the evidence presented in conjunction with Plaintiff's Motion for Summary Judgment did not appear to be sufficient to prove a *prima facie* case. See Opinion and Order on Motion for Summary Judgment (#**344**). Having considered Mr. Freeman's response and the additional evidence he submits, the Court **FINDS** and **CONCLUDES** the following.

### I. Background

Mr. Freeman is incarcerated in a Colorado state prison. He initiated this action in March 2006, bringing several claims related to his incarceration. After resolution of a motion for

summary judgment and various amendments and clarifications of the Order granting summary judgment (**#281, #291, and #310**), only one claim remains.

Mr. Freeman's sole claim is brought under the Fourteenth Amendment to the United States Constitution for denial of due process at a July 6, 2004 disciplinary hearing at which he was found guilty of two Colorado Department of Corrections ("CDOC") Code of Penal Discipline ("COPD") violations: (1) assault and (2) tampering with locks or security device. As sanctions for these violations, Mr. Freeman lost 45 days of good time credits, 90 days of privileges, and was required to pay $1,626.20 in restitution.[1]

Mr. Freeman moved for summary judgment in his favor on this claim.[2] Upon review of the undisputed evidence, including a transcript of the hearing itself and related documents, the Court found that the evidence, taken as true and construed most favorably to Mr. Freeman, did not establish a *prima facie* claim for denial of due process. In response to the Court's Order to Show Cause, Mr. Freeman has submitted additional evidence and argument. He also requests additional time for discovery to obtain evidence that might support his claims. The Court reviews Mr. Freeman's submissions to determine whether the newly proffered evidence in conjunction with that previously submitted by Mr. Freeman is sufficient to establish a *prima facie* claim that his right to due process was abridged.

---

[1]The restitution ordered was for medical costs incurred by Officer Bork. The evidence of her expenses was a written memorandum tallying the charges.

[2]This was the first time in these proceedings that all of the evidence relating to the disciplinary charges and from the hearing was proffered. Previous motions concerned the allegations contained in Mr. Freeman's Complaint or other legal issues, and did not involve consideration of evidence or the merits of the due process claim.

2

## II.  Analysis

**A.     Prior Determination in Order on Motion for Summary Judgment**

The material facts are set forth in detail in the previous order (**#344**) addressing Mr. Freeman's Motion for Summary Judgment, and are incorporated herein by this reference. In summary, Mr. Freeman was found guilty of assault and tampering with a lock or security device in the disciplinary proceeding on June 26, 2004. The charges were based on the complaint that Mr. Freeman injured Officer Maria Bork when he shoved a box at her, blocked the door with his body as she attempted to lock him in his cell, pushed her into a rail behind her, and thereafter resisted her efforts to handcuff him.

Mr. Freeman contends that during the disciplinary hearing, his due process rights were violated because: 1) he was not provided notice that restitution was a sanction that could be imposed; 2) he was denied the right to call witnesses; 3) he was not allowed to complete his testimony; 4) he did not receive adequate assistance from Defendant Carroll, his hearing representative; 5) he did not receive adequate explanation of the decision and there was insufficient evidence to support the determination of his guilt.

The process due an inmate in a disciplinary proceeding is not the same as accorded in a criminal matter. Instead the inmate is entitled to: 1) advance written notice of the charges against him; 2) the opportunity, if consistent with institutional safety and correctional goals, to call witnesses and present evidence in his defense; 3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action; and 4) some evidence in the record that supports the conviction. *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974)); *Mitchell v. Maynard*, 80 F.3d 1433, 1444–45 (10th Cir. 1996).

In its prior ruling, the Court addressed Mr. Freeman's contention with regard to the restitution sanction by observing that *Wolff* does not require that an inmate receive advance particularized notice that restitution is a possible sanction. Even it did, Mr. Freeman received notice by way of prison regulations informing him that restitution could be ordered on any disciplinary charge.

As to Mr. Freeman's opportunity to call witnesses, the undisputed record of the disciplinary hearing showed that Mr. Freeman had been informed of his right to call witnesses and to request a continuance in order to do so, but that at no time did Mr. Freeman affirmatively state he wished to call witnesses, identify any witnesses he wanted to call, or request a continuance.[3] He was asked several times if there was "anything else" or "anything new" he wished to present but he never indicated a desire to call witnesses or obtain further evidence. Even if there was an error, the Court found it harmless because Mr. Freeman made no representation as to what witnesses he would have called and what their testimony might have been.

With regard to his testimony, the hearing transcript also showed that although Mr. Freeman was not permitted to testify about extraneous issues, he was permitted full testimony as to the incident and allowed to cross-examine the only witness who testified against him. If there was an error, the Court found it harmless because Mr. Freeman did not identify what he would have testified to had he not been interrupted.

The Court also found that the undisputed evidence failed to show inadequate assistance

---

[3] As noted in the order, his only statement pertaining to witnesses was oblique and inspecific - that he would "like to talk to some witnesses first." He never told the disciplinary board who those witnesses were, however.

4

by Mr. Carroll (Mr. Freeman's inmate representative). Mr. Freeman demonstrated no right to an inmate representative, but regardless of the right, he did not specify any tasks that Mr. Carroll should have performed in conjunction with the hearing that Mr. Freeman was unable to perform. For example, although he complained the Mr. Carroll failed to have witnesses present, Mr. Freeman was able to call witnesses or to request a continuance to do so.

Finally, the Court found that Mr. Freeman received constitutionally adequate written notice of the basis of the decision and that there was some evidence to support the decision.

**B.     New Evidence and Argument**

The Court turns to Mr. Freeman's newly submitted evidence and arguments regarding the applicable standards governing his claim.

**1.     Ability to Call Witnesses**

Due process requires that Mr. Freeman be given the *opportunity* to call witnesses, and the record reflects that he was given that opportunity.[4] There remains no dispute as to what occurred during the disciplinary proceedings, given that Mr. Freeman does not contest the accuracy or authenticity of the audio recording and transcript that has been presented.[5] The record of the proceeding shows that Mr. Freeman was advised that he could call witnesses or

---

[4]Mr. Freeman argues that the Court, in its previous order, improperly found that Mr. Freeman waived his right to call witnesses. To clarify, waiver is not the basis of the analysis here. Rather, as discussed above, the Court has determined that the undisputed facts demonstrate that Mr. Freeman was not denied the opportunity to call witnesses or prevented from doing so; he merely failed to identify witnesses he wished to call when given the opportunity to do so at the hearing.

[5]A transcript was submitted as Exhibit 4 to Mr. Freeman's original Motion for Summary Judgment (**#322**). Mr. Freeman now submits the original recording of the hearing. Exh. G to Response Brief. The Court has reviewed this recording and finds that it does not differ materially from the transcript previously supplied.

request a continuance, and that he did neither.

Mr. Freeman has submitted a supplemental affidavit in which he states that he told Mr. Carroll that he wanted to call Officer Spurlock, another inmate named Wimmer, Tyree Kirk, Lieutenant Hawkins, and Officer Bork. Exh. E to Response Brief, **#347-5**, ¶ 46. He also explains why he believes these witnesses would have offered favorable testimony, and that he "thought that Mr. Carroll would help me get these witnesses, whose names I wrote down for him, called to the hearing, since I could not arrange for their presence myself. I at least thought he would ask to have the hearing postponed if it was necessary to interview or call witnesses." *Id*. ¶ 52. However, Mr. Freeman also states that Mr. Carroll told him that he could not help or represent Mr. Freeman at the hearing. *Id*. at ¶ 54.

Taking these facts as true, they remain insufficient to establish a *prima facie* claim that Mr. Freeman was denied due process because he was denied the opportunity to call witnesses. Regardless of whether Mr. Freeman told Mr. Carroll the names of the witnesses he wanted or not, at the hearing Mr. Freeman knew that witnesses he desired were not present. He was advised that he could call witnesses or that he could request a continuance, but he did neither. The advisement was sufficient to provide Mr. Freeman with the opportunity to call witnesses.

### 2. Interrupted Testimony

An inmate also has the right to present evidence in his defense, consistent with security and safety objectives. Mr. Freeman claims he was denied this right because his testimony at the hearing was interrupted and curtailed.

In his supplemental affidavit, he states that if the Chairman had not cut off his testimony, Mr. Freeman "would have explained to the hearing board that when Officer Bork was cuffing me, she squeezed the cuffs so tight it caused me to reflexively pull away from here. I would also

6

have explained that I never touched her or intended to cause her any injury." Exh. E to Response Brief, **#347-5**, ¶ 68.

The transcript shows that although Mr. Freeman was interrupted in his discussion of events that occurred after the incident, he testified that the reason he resisted the handcuffs was that they were too tight and that he accidently pulled away. Tr. **#322-2**, at 12-13.[6] He also testified that he did not touch Officer Bork. See Tr., **#322-2**, at 14-15 ("All I can say is under God and everything I believe in, honor and integrity, you might not have put it on that thing, but I want to put it in there. Under the God I believe in, Jesus Christ, I did not initiate or have any physical contact with this woman right there. I did not put my hands on here. I did not touch her. I will take a polygraph to that."). Thus it appears that any interruption of Mr. Freeman's testimony did not deprive him of the opportunity to present evidence in his defense.

### 3.   Sufficiency of written decision

Under *Wolff*, an inmate is entitled to a "written statement by the factfinders as to the

---

[6]

> Mr. Freeman: . . . But when she asked me to turn around and cuff up, I turned around to cuff up. She put the cuff on my hands so tight that it shot pain straight up to my arm, to my shoulder. . . . The handcuffs were on me so tight that when I sat through their little interrogation in the security office and they took me over to the hole, Hawkins couldn't even follow his procedure or protocol and take the cuffs off of me where they put a double set on.
>
> * * *
>
> Mr. Freeman: Well, I'm showing the reason why I took and turned around when she pulled the handcuffs off. . . .
>
> * * *
>
> Mr. Freeman: She put those things on me so tight the pain shot through my arm. I couldn't even (inaudible).

7

evidence relied on and reasons for the disciplinary action." 418 U.S. at 564-65. There is no dispute that Mr. Freeman received a written statement containing a listing of the evidence relied upon and the board's factual findings, as well as the reasons for the disciplinary action. Mr. Freeman did not present any new evidence with respect to the written statement.

Mr. Freeman raises legal issues, however, regarding how detailed such written statements must be. He contends that the written statement is inadequate if the factfinders "do not demonstrate how, if at all, the committee weighed all of the evidence presented to it to ensure a fair result, nor does the statement 'explain why the committee did not believe [Plaintiff's] version of the story,'" citing *Washington v. Chrans*, 769 F. Supp. 1045, 1052 (C.D. Ill. 1991). Response Brief, #**347**, at 22-23.

As the Court previously noted, under *Wolff* and Tenth Circuit case law, the purpose of a written statement of the decision is to "protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding" and to help "insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly." 418 U.S. at 565; *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996). The *Wolff* standard, therefore, is essentially a functional standard, whereby the adequacy of the written statement is judged by how well it explains the basis for the decision. *See Mitchell* at 1445 ("The lack of more specific findings also did not hamper our ability to review the proceeding and its findings."). According to this standard, the written decision here provides adequate information to protect Mr. Freeman from collateral consequences and to permit the Court to review the decision; it therefore satisfies these requirements of *Wolff*.

*Chrans* does not alter this analysis or conclusion. *Chrans* follows Seventh Circuit

8

precedent in holding that a "general finding" that merely incorporates the contents of a violation report does not provide sufficient information for a reviewer to understand why the inmate was found guilty and therefore does not satisfy the *Wolff* due process standard.[7] 769 F. Supp. at 1052. Although *Chrans* is not binding precedent in the Tenth Circuit, its holding would not change the outcome here because the written decision in this case is not limited to a "general finding" that merely incorporates the contents of the violation report. Instead, it sets out the board's factual findings as to what occurred, the evidence it relied upon and the reasons for the sanctions imposed.[8] From this written document, a reviewing court can determine on what basis the decision was made and compare it to the evidence presented to ensure that the decision was not arbitrary and was supported by "some" evidence.

Mr. Freeman also argues that the written statement is inadequate because it did not specifically itemize the one item of evidence that showed the medical costs incurred by Officer Bork, a memorandum from the prison administration tallying her medical costs. It is apparent in

---

[7]The written decision in *Chrans* was just such a "general finding," which contained an inaccurate statement of fact. In addition, the court determined that upon reading the summary "one is at a loss to figure out why the inmate was found guilty." 769 F. Supp. at 1052. *Chrans* also relies in part on administrative regulations in Illinois requiring that in the written reports of disciplinary proceedings, "committee members shall specifically refer to the evidence which convinced them to decide the committed person did or did not commit the offense."

[8]The "Disposition of Charges" stated that the assault conviction was based on the findings that Mr. Freeman "applied physical force against Officer Maria Bork by pushing her into a rail outside of his assigned cell, and by forcefully pushing a box of paints into her chest, and by pulling away from her as she was attempting to hand cuff him." Exh. 6 to Pl.'s Mot. for Summ. J., **#322-4**. The tampering conviction was based on the finding that Mr. Freeman "prevented his cell door from closing by blocking it with his body after Officer Maria Bork told him to remain in his cell. By doing so, Freeman prevented the security door from functioning as designed." *Id.* The evidence relied upon was Officer Bork's written statement, the presentation by Lieutenant Directo, and Mr. Freeman's testimony. *Id.* The reason given for the sanctions imposed was because the assault was serious, was on staff, and staff was injured. *Id.*

the record that the memorandum was submitted by Lieutenant Directo in his presentation and the written statement identified "Presentation by: Darryl Directo, Lieutenant" as evidence supporting the decision. This satisfies the requirements of *Wolff*.

      **4.**     **Sufficiency of evidence supporting conviction and restitution sanction**

Mr. Freeman no new evidence with regard to his contention that the evidence was insufficient to support the conviction and the restitution award. Instead, he advances three new legal arguments: (1) that the disciplinary committee was required to make a preliminary reliability determination before they could consider the evidence presented at the hearing; (2) that the evidence supporting the conviction and the restitution award was so unreliable that it did not constitute "some evidence" under the *Hill* standard; and (3) that imposition of a restitution sanction required more evidence than that sufficient for deprivation of privileges or good time credits.

As to the first argument, a preliminary showing of reliability is required in cases where the evidence came from a confidential informant. *See, e.g., Taylor v. Wallace*, 931 F.2d 698 (10th Cir. 1991). In such circumstances, "the testimony of confidential informants cannot be given any weight absent a 'determination made by the prison staff that indicated that the informant was reliable.'" *Id.* at 701. As this case does not involve a confidential informant, but rather the testimony of identified correctional officers, there was no legal requirement for the board to make a preliminary determination that the witnesses were reliable.

As to the second argument, the Court recognizes that in some cases, the evidence relied upon by the disciplinary committee can be so patently implausible or unreliable as to amount to no evidence at all. *See, e.g., Luna v. Pico*, 356 F.3d 481, 489 (2d Cir. 2004) ( where the "'evidence' consisted solely of a bare accusation by a victim who then refused to confirm his

10

initial allegations;" alleged victim refused to testify at hearing when asked to confirm his report, hearing officer did not interview officer who wrote disciplinary report, disciplinary report was not based on staff observation, no investigation was made). This is not that type of case, however. The evidence here involved a corrections officer's first-hand report of the incident, which was thereafter investigated. Despite Mr. Freeman's disagreement with the weight or interpretation given to the evidence received by the board, it was not so spare or implausible as to give rise to a constitutional deprivation.

To the extent that Mr. Freeman challenges the restitution award, the Court understands his argument to be that there is a different due process standard that must be satisfied before he can be deprived of property. Having reviewed the case law cited by Mr. Freeman, the Court remains convinced that *Wolff* and *Hill* set forth the appropriate due process standard for all aspects of an inmate disciplinary proceeding even when restitution is ordered.[9] The evidence in the record of the proceeding quantifies Officer Bork's medical expenses. Exh. 5 to Mot. for Summ. J., **#322-4**. As with sufficiency of evidence for conviction of a disciplinary violation, neither the quantum nor the persuasiveness of the evidence bears upon Mr. Freeman's due process rights. Because some evidence supports the determination of the cost incurred as a result of Mr. Freeman's actions, due process has been satisfied.

---

[9] As support for his contention that the *Wolff*/*Hill* standard is not the appropriate for deprivations of property as a result of disciplinary proceedings, he cites *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), a case that predates *Wolff* and *Hill*, for the proposition that a deprivation of property must "be preceded by notice and opportunity for hearing appropriate to the nature of the case." 339 U.S. at 313. The Supreme Court has made clear that the *Wolff* and *Hill* standards are appropriate to prison disciplinary proceedings and *Mullane* does not hold otherwise. Mr. Freeman also cites *Keeling v. Schaefer*, 181 F.Supp.2d 1206 (D. Kan. 2001); however, *Keeling*, another inmate disciplinary case involving a restitution sanction, applied *Wolff* as the appropriate due process standard.

### 5. Assistance by Mr. Carroll

Mr. Carroll was appointed as Mr. Freeman's inmate representative for the disciplinary hearing. In *Wolff*, the Supreme Court indicated that an representative should be available where an inmate's illiteracy or the complexity of the case "makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." 418 U.S. at 570. The appointment of an inmate representative, however, does not give an inmate greater procedural rights than he would otherwise have. *See, e.g., Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993) (representative acts as inmate's surrogate, "to do what the inmate would have done were he able").

The Court understands Mr. Freeman to contend that Mr. Carroll's alleged failure to conduct an investigation, secure witnesses or request a continuance deprived him of his qualified right to present evidence in his defense.[10] Mr. Freeman submits new evidence in support of this claim in the form of statements in his supplemental affidavit regarding what he expected Mr. Carroll to do. He states, "I also thought that Mr. Carroll would get incident reports for me and help me identify and obtain other relevant documents so that I could adequately defend myself at the hearing." Exh. E to Response Brief, **#347-5**, at ¶ 53. He also states, "I thought, at the very least, though, [Mr. Carroll] would make sure I was able to call my witnesses and do anything else necessary to make sure that I had a fair hearing. I did not expect that he would remain completely silent throughout the entire hearing, especially after I had told him I wanted

---

[10]To the extent that Mr. Freeman contends that he was denied the right to conduct a pre-hearing investigation because of his confinement in segregation before the hearing, *Wolff* does not specifically guarantee this right. Even considering such a right to be implied in the right to present evidence in one's defense, as noted below, Mr. Freeman was nonetheless capable of requesting a continuance, documents, or the opportunity to obtain further evidence.

12

witnesses and gave him the names of who I thought might be able to testify in my defense." *Id*., at ¶ 55.

As explained earlier, what Mr. Freeman expected Mr. Carroll to do and whether or not he did it[11] is not pertinent unless Mr. Freeman was unable to assert his rights or present his defense because of Mr. Carroll's failure. As has been noted multiple times, Mr. Freeman was advised of his right to call witnesses or request continuance. He could have notified the Board that he did not have the witnesses or investigation that he needed to present his defense and that he needed a continuance to obtain such information. Mr. Freeman acknowledges this, but he states that he was "caught off guard" and "felt overwhelmed" by the proceedings. Exh. E to Response Brief, **#347-5**, at ¶ 66. Without deprecation of Mr. Freeman's feelings, they are not the measure of his due process rights. He is entitled to the opportunity to present evidence; this he was provided. Nothing that Mr. Carroll did or did not do adversely affected that opportunity.

### 6.     **Additional Discovery**

Mr. Freeman's counsel request the opportunity to conduct further discovery pursuant to Fed. R. Civ. P. 56(d)[12]. This rule allows a court to grant a non-movant additional time to obtain affidavits or declarations or to obtain additional discovery in order to respond to a Motion for

---

[11]Mr. Carroll's failure to act on Mr. Freeman's unspoken expectations does not amount to a violation of due process. *See Silva*, 992 F.2d at 22 (assistant not required to go beyond instructions of inmate because to do so would amount to acting as counsel for inmate).

[12]Mr. Freeman initiated this action in a *pro se* capacity. Counsel undertook his representation after discovery had closed, but never moved to reopen it. Instead, counsel filed a motion for summary judgment on Mr. Freeman's behalf, apparently assuming that his evidence was sufficient not only to establish a *prima facie* case, but also sufficient to prevail on the claim as a matter of law. Only in response to Court's Order to Show Cause did counsel seek to reopen discovery. Given this history, the Court is not inclined to view Mr. Freeman's prior *pro se* status as a significant factor in reviewing the request.

Summary Judgment. To obtain such relief, the non-movant must show the specific reasons that facts essential to his opposition are unavailable. To justify additional discovery, a non-movant must identify the probable facts not available, what steps have been taken to obtain these facts, and how additional time will enable the non-movant to rebut the allegation that there is of no genuine issue of material fact. *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006) (applying former Fed. R. Civ. P. 56(f)).

The affidavit provided by Mr. Freeman's counsel recites that despite Mr. Freeman's attempts to discover relevant information, certain materials were not provided by the Defendants. Exh. J to Response Brief, **#347-10**. Counsel suggests that additional discovery is needed as to:

> what conduct Defendants engaged in prior to, at, and after the hearing, the information they knew prior to, at, and after the hearing, whether any denial of rights at the hearing may have been the result of bias of the hearing board or my client's inmate assistant, whether exculpatory evidence existed, whether Defendants knew of any exculpatory evidence, whether the hearing board considered evidence that my client and I are unaware of, and if they did, what that evidence was, the manner in which the Colorado Department of Corrections has obtained restitution funds from Plaintiff (e.g., forfeiture, garnishment, attachment), the purpose of the restitution, to whom restitution is paid, whether there exist any internal policies that I nor my client has access to governing the imposition of monetary restitution as a disciplinary sanction, and any other information that may come to light through the discovery requested.

*Id*. at ¶ 6. Mr. Freeman desires depositions of the Defendants, billing records for Officer Bork's medical treatment, records of insurance policies and claims made, internal documents regarding "COPD conversion offsets," all records pertaining to withdrawals or deductions from Mr. Freeman's account(s) in satisfaction of the restitution order, internal communications regarding the restitution charge, and internal policies and memoranda regarding the imposition and

handling of restitution in inmate proceedings.

Further discovery is not warranted for several reasons. First, the Court has some doubt as to whether Mr. Freeman is a "non-movant" for purposes of Rule 56(d). He brought the Motion for Summary Judgment representing that the undisputed facts were sufficient for entry of a judgment in his favor. Prior to the amendment to Rule 56 in 2010, the Court could have simply entered a judgment against Mr. Freeman based upon his preliminary showing. Now, however, Rule 56(f) gives him the opportunity to supplement his showing. There is no indication in Rule 56, however that such opportunity converts his status to that of a non-movant.

Assuming that Mr. Freeman is treated as a non-movant, he nevertheless has not demonstrated that additional time or discovery would enable him to come forward with evidence sufficient to carry his *prima facie* burden as to the claim asserted. The alleged due process violation is premised upon what took place during the disciplinary hearing and the adequacy of the notices Mr. Freeman received. The record of that hearing and its outcome, as well as all notice and decision documents, is before the Court. Mr. Freeman seeks to discover evidence outside the context of the hearing, but there is no showing that such discovery would impact Mr. Freeman's rights to due process during the hearing.[13] Therefore, his request is denied.

Considering the supplemented record, Mr. Freeman has not come forward with sufficient evidence to establish a *prima facie* claim for denial of due process. As a consequence, entry of

---

[13] It appears that Mr. Freeman seeks discovery that would assist him in challenging the ultimate decision of the disciplinary board; however, due process provides protections as to procedure rather than outcome. Mr. Freeman also seeks evidence that he speculates might show bias on the part of the hearing officers and Mr. Carroll. Although bias could impact due process rights, pure speculation of bias is not a legitimate basis to reopen discovery. Mr. Freeman also appears to seek evidence whereby he might challenge the validity of the CDOC's restitution regime as a whole; however, that is not pertinent to the claim asserted against these Defendants.

summary judgment in favor of the Defendants is appropriate.

**IT IS THEREFORE ORDERED** that:

(1) Summary judgment is granted in favor of the Defendants and against Mr. Freeman on the sole remaining claim of violation of due process.

(2) The Clerk of the Court shall enter judgment and close the case. All pending motions shall be terminated.

(3) The Defendants may have their costs.

Dated this 18th day of January, 2012

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge